JOHN REESE

*v.*

W. H. WALLACE.

*Filed at Springfield May 14, 1885.*

1. TRUST—*enforcement in equity—Statute of Frauds.* A person accepted an agency from five mortgagees holding mortgages upon the same land, to take the necessary steps to foreclose them, and collect the money due thereon. The agent employed an attorney, who obtained a decree of foreclosure, the agent bidding off the property, in the name of the second mortgagee, for the amount due on the two first mortgages, and agreeing with the attorney that if the latter could sell the property for enough to discharge all the mortgages, he should do so. The attorney procured a party to purchase the interest of the third mortgagee and advance a sum sufficient to pay all the parties, the attorney agreeing to have the certificate of purchase assigned to him. The agent settled with the holder of the certificate, and took an assignment thereof, and after the time for redemption had expired, refused to transfer the certificate to the party who had advanced the money due to all the parties, and sought, by *mandamus,* to compel the master in chancery to make him a deed. Thereupon the purchaser, by bill, enjoined the proceeding, and obtained a decree for the assignment of the certificate to himself: *Held,* that a court of equity had jurisdiction to enforce the trust, and that the Statute of Frauds was no defence to the bill.

2. ESTOPPEL—*by omitting to repudiate the action of an attorney before the rights of third persons have accrued, in respect to the title to land.* An attorney employed by an agent to collect certain mortgage debts, after a sale for the amount due the first two mortgagees, was authorized by the agent for all the mortgagees to make a sale of the property for a sum sufficient to pay all, and did make such sale to a party who bought the interest of one of the mortgagees whose debt was not paid by the sale, in time for making redemption, if the arrangement made by the attorney had then been repudiated by the agent. The agent afterward obtained the certificate of purchase, and on the expiration of the time for redeeming, refused to transfer the certificate, but took proceedings to compel the making of a deed to himself. It was *held,* that such agent, by not repudiating the sale made by the attorney before the redemption expired, and remaining silent, was estopped from asserting any right to a deed as against the purchaser from the attorney.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Coles county; the Hon. C. B. SMITH, Judge, presiding.

Mr. JAMES A. CONNOLLY, and Messrs. DUNN & CONNOLLY, for the plaintiff in error:

Specific performance of the contract could not be had, as it was not a contract respecting land, and there was an adequate remedy at law. *Parker* v. *Garrison,* 61 Ill. 252; *Bowman* v. *People,* 82 id. 246; Pomeroy on Contracts, sec. 48; *Pierce* v. *Plumb,* 74 Ill. 326.

The evidence fails to show any authority in Favorite to make the sale, or that his act in doing so was ratified by the plaintiff in error. To make a ratification of the acts of an agent binding upon the principal, he must be fully and fairly informed of all the material facts. *Matthews* v. *Hamilton,* 23 Ill. 470; *Reynolds* v. *Ferree,* 86 id. 570; *Kerr* v. *Sharp,* 83 id. 199.

Equity will not allow a party to hire an agent to make a contract for his principal, and then enforce the contract so obtained, against the principal. He can not rightfully acquire an interest adversely to his principal. *Tewkesbury* v. *Spruance,* 75 Ill. 187; *Hughes* v. *Washington,* 72 id. 84; Story on Agency, secs. 31, 210, 211; *Davis* v. *Hamlin,* 108 Ill. 39.

Attorneys, without special authority, can do no more than obtain judgment, have execution issued, and receive and receipt for the proceeds. *Nolan* v. *Jackson,* 16 Ill. 272; *Trumbull* v. *Nicholson,* 27 id. 149.

Mr. J. F. HUGHES, for the defendant in error:

On demurrer to the bill, it was contended the certificate is personal property, and that a bill will not be entertained to specifically perform a contract about personalty,—that the remedy at law for damages is adequate and complete. The demurrer was overruled, and that decision is abundantly sustained by authority. *Parker* v. *Garrison,* 61 Ill. 252; *McMullen* v. *Van Zant,* 73 id. 190.

Reese, by his silence and acquiescence, ratified what Favorite had done. *Hearing* v. *Butler,* 69 Ill. 578.

Reese can not be allowed to speculate at the expense of those men whose interests he undertook to secure. He could not deal with the matter of his agency on his own account. *Dennis* v. *McCagg*, 32 Ill. 443.

The objection to the jurisdiction on the ground there is adequate remedy at law, can not be raised on the hearing, or in the Appellate Court, but must be insisted on in the answer, and no such defence is raised by this answer. *Long* v. *Saunders*, 88 Ill. 144.

Reese may be treated as a trustee. *Parker* v. *Garrison*, 61 Ill. 254; *Davis* v. *Hamlin*, 108 id. 49.

Mr. CHIEF JUSTICE SCHOLFIELD delivered the opinion of the Court:

Perley K. Scott executed mortgages on the lands in controversy, which lie in Coles county, in the order and for the amounts following: First, to George Wabnitz, for $1297.78; second, to Benjamin F. Nose, for $778.14; third, to Joseph W. Scott, for $354.28; fourth, to Frank M. Nose, for $205.77; fifth, to Frederick Jansen, for $184.54; and sixth, to George W. Keen, for $306.46. The mortgagor and mortgagees all resided in the State of Ohio, and the mortgagor, apart from his ownership of these lands, was insolvent. In the spring or early summer of the year 1880, the holders of the second, fourth and fifth of these mortgages,—*i. e.*, Benjamin F. Nose, Frank M. Nose, and Frederick Jansen,—employed one John Reese, also a resident of the State of Ohio, to take their several mortgages to Charleston, in Coles county, and employ an attorney at law there to foreclose and collect them, advancing him money wherewith to pay his expenses. Accordingly, in June, 1880, Reese went to Charleston, and there, as the agent of these parties, employed John Favorite, an attorney at law, to foreclose them and collect the amounts due upon them, for a certain stipulated per cent upon the amount to

be collected. It was, moreover, at the same time further agreed that Reese, who was acquainted with the other mortgagees, should endeavor to get them to place their mortgages in Favorite's hands for collection also, and that if they should do so, Favorite should collect the whole for a less rate per cent. Reese procured, in pursuance of this agreement, the other mortgagees to place their mortgages in Favorite's hands for collection, and thereupon Favorite procured a decree of foreclosure upon the several mortgages, at the November term, 1880, of the Coles circuit court. On the 1st of March, 1881, the property was sold under the decree by the master in chancery. Wabnitz was present, and bid the amount due upon his mortgage. Reese then bid the amount due upon the mortgage to Benjamin F. Nose, in addition to the amount due upon the mortgage to Wabnitz, and he took a certificate of purchase to Benjamin F. Nose for the property, first paying to the master in chancery the amount bid by Wabnitz. Favorite testifies that on the night after the sale it was agreed between Reese and himself that if a purchaser for the property could be found before the time for redemption expired, it should be sold, and they would get the mortgagor to make a deed to such purchaser; that if a purchaser could be found after, and not before, the time for redemption expired, it should be sold, and they would have the party holding the certificate of purchase assign it to such purchaser, (provided, in either case, the price should justify such a course,) and that an effort should be made to effect such a sale for the benefit of the several mortgagees. This is denied by Reese, who says he intended to take title to the property in himself, in the event it was not redeemed according to law. Favorite further testifies, that in accordance with this agreement he had the property advertised for sale by certain real estate brokers, and that he otherwise made strenuous efforts, but which were unavailing, to make a sale of it during the remainder of the year 1881.

In March, 1882, W. H. Wallace purchased Joseph W.
Scott's claim and mortgage, which were then assigned to
him, and shortly afterwards he paid to the master in chan-
cery the amounts then due under the sale to Wabnitz and
Benjamin F. Nose, intending thereby, and thinking, that he
had the right thus to redeem from the sale; and he also then
paid to the master in chancery the amount due on the mort-
gage to Frank M. Nose, and redeemed the property from a tax
sale.    Some arrangement was made between the mortgagor
and Keen, whereby Favorite was empowered to release Keen's
mortgage, and this he did.    It was agreed between Wallace
and Favorite, the latter assuming to act for the mortgagees,
that in consideration of these payments, and that Wallace
would also pay Jansen the amount due upon his mortgage,
the several payments so made and to be made should be
accepted in satisfaction of the amounts due the respective
parties on their several mortgages, and that the certificate of
purchase to Benjamin F. Nose should be transferred to him,
and the master in chancery make a deed directly to him.
Wallace then also paid to Jansen the amount due upon his
mortgage, and in all respects fully complied with his agree-
ment with Favorite.

Benjamin F. Nose was indebted to the mother of Reese
for money borrowed by him of her before this sale, the note
to secure which was due on the 20th of April, 1882.    The
certificate of purchase was in the hands of Reese from the
time it was issued by the master in chancery.    On the 27th
of May, 1882, Reese and he settled, and Nose assigned him
the certificate of purchase in payment for the money he had
advanced at the time of the sale on account of the bid of Wab-
nitz, and of the note due to his mother on the 20th of April.
On the last day of May, 1882, Reese presented this certificate
of purchase to the master in chancery, and demanded from
him a deed for the property.    The master refused to make
the deed.    Thereupon Reese instituted a proceeding by *man-*

*damus* to compel the master to execute to him a deed. The present bill is to enjoin that proceeding, and to compel the delivery of the certificate of purchase, properly assigned, to Wallace.

The objections that the case is not one wherein a court of equity has jurisdiction, and that the plea of the Statute of Frauds is a defence, are made, as we conceive, under a misconception of the real purpose of the bill. The case is not one simply to enforce specific performance of an ordinary contract, but to enforce the execution of a trust by a trustee, and hence neither objection is tenable. (*Weaver* v. *Fisher,* 110 Ill. 147; *Davis* v. *Hamlin,* 108 id. 39.) Reese accepted an agency, first, as to the collection of the second, fourth and fifth mortgages, beyond any question, and the evidence, we think, authorizes the conclusion that he also acted in that capacity as to the other three, for he procured them to be sent to Favorite for collection, and fixed, by contract, the terms upon which they were to be collected. He had no interest in either of these claims as owner, but was acting as the paid agent of the mortgagees when they were placed in the hands of Favorite for collection. There is no evidence that this agency terminated when Favorite was employed,— on the contrary, it is shown that he continued to act as agent, and there is evidence of admissions made by him, after the sale, which strongly corroborates the evidence of Favorite that an agreement was made between them, on the night after the sale, that the property was to be sold, if possible, for the benefit of all the mortgagees. Thus, Wabnitz says he was present, and heard Favorite say to Reese, on the day of sale, that he could find a purchaser who would pay all the mortgages on the land. Jansen says: "When he came back, after the sale, he said he had bid the land in at Ben Nose's claim, and said there was no other bid except for Ben Nose's and Wabnitz' claims. He said, keep cool,—there might be some chance of getting my money. Afterwards he said I

would get my money sure, now,—that Favorite had written him it was all paid in."

We deem it unnecessary to discuss the evidence at length. It is clear, beyond cavil, that Reese was paid by Jansen to act as his agent in procuring the collection of his mortgage, saying nothing of his obligations to the others. Jansen gave him, and he accepted from him, ten dollars on that account. His duty to Jansen was just as imperative as it was to Benjamin F. Nose. Without betraying his trust, it is impossible that he could change his agency into a private speculation. The arrangement which Favorite swears he did make was precisely what his duty required he should make. All that Benjamin F. Nose was entitled to have, was his money by the time the period of redemption expired. Scott and Jansen, and Frank M. Nose, were each entitled to redeem, but if the arrangement testified to by Favorite could be effected, and which was effected through the sale to Wallace, that was unnecessary, because thereby each gets what he is entitled to have. After Wallace purchased from Joseph W. Scott, he was equitably entitled to take steps to redeem, and the evidence shows that Reese knew of this purchase, and of the arrangement made between Favorite and Wallace, long enough before the time of redemption expired to have enabled Wallace, had Reese promptly repudiated it, to have taken steps to save himself. But knowing all this, he remained silent, and did not, until the time for redemption had passed by, inform either Wallace or Favorite that he intended to claim the property himself. The doctrine of equitable estoppel is applicable. He remained silent when duty required him to speak, and equity will not, therefore, now allow him to speak. In no view is Reese entitled to hold this certificate of purchase. Fidelity to his trust requires that it shall be held to be the property of Wallace, and the decree, therefore, requiring him to assign and deliver it, is right.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*